UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TAMARA BOS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SPARKS TRIBUNE, LLC, and NANCY ) <br> STREETS, ) <br> ) <br> Defendants. ) <br> ) | 3:09-CV-00573-LRH-VPC <br><br> ORDER |

Before the court is Defendants Sparks Tribune, LLC ("Tribune") and Nancy Streets' (collectively "Defendants") Motion to Dismiss (#5[1]). In response, Plaintiff Tamara Bos filed an opposition (#10) to which Defendants replied (#13). Plaintiff also filed a supplement to the opposition (#14).

**I.   Facts and Procedural History**[2]

This is an employment discrimination dispute arising out of Plaintiff's employment with the Tribune. From May, 2004, until January, 2008, Plaintiff worked for the Tribune as an advertising

---

[1] Refers to the court's docket entry number.

[2] The court has taken the following facts primarily from the complaint. Because the court considers this case on a motion to dismiss for failure to state a claim, the court accepts the allegations in the complaint as true. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

sales representative. (Compl. (#3) 3.) Plaintiff alleges that she is disabled and that the Tribune knew about Plaintiff's disabilities when it hired Plaintiff. (Compl. (#3) 3.) Plaintiff claims she acquired her disability as a result of breaking both of her ankles, which now have titanium implants. (Compl. (#3) 4, 5G.)

Plaintiff alleges that her disability significantly limits her physical activities. Specifically, Plaintiff provided to the Tribune a note from her physician verifying that Plaintiff's disability prevents her from working past 6 p.m. (Compl. (#3) 5K.) Plaintiff also claims she has difficulty walking. (Compl. (#3) 5O.)

Plaintiff further alleges that despite her request, Tribune did not provide an adequate chair for her. (Compl. (#3) 5V.) As a result, Plaintiff had to tie a large pillow to the back of her chair to help her sit up, causing Plaintiff's co-workers to make sarcastic comments and laugh at her. (Compl. (#3) 5V.) Furthermore, when Plaintiff's ankle swelled, she had to put her right ankle up on a lower drawer of a filing cabinet to rest it. (Compl. (#3) 5G.)

Plaintiff also claims that the Tribune was unwilling to accommodate her parking needs. Although the Tribune provided two designated parking spots for the disabled, these spots were far from the entrance that Plaintiff used. (Compl. (#3) 5O.) When Plaintiff was in pain because of her disability and when it snowed, Plaintiff parked in the customer parking lot closer to the entrance. (Compl. (#3) 5O.)

Plaintiff alleges that her co-workers and the Tribune's advertising director, Defendant Nancy Streets, harassed Plaintiff because she parked in the customer parking lot next to the entrance. (Compl. (#3) 5O, 5P, 5Q.) Specifically, Streets issued a memorandum prohibiting anyone from parking in the customer parking lot. (Compl. (#3) 5O.) However, after Plaintiff spoke with the publisher of the Tribune, Ed McCaffrey, he allowed her to park close to the entrance, provided it did not happen all the time. (Compl. (#3) 5O.)

Plaintiff also alleges that because of her disability, Streets took away one of Plaintiff's major advertising accounts. (Compl. (#3) 5R.) Moreover, Plaintiff claims that Streets micro-managed only Plaintiff's work.[3] (Compl. (#3) 5E.)

On January 18, 2008, Plaintiff voluntarily resigned from the Tribune. (Opp. Mot. Dismiss (#10) 6:16-17.) Plaintiff later filed a claim with the Nevada Equal Rights Commission and Equal Employment Opportunity Commission ("EEOC"). (Compl. (#3) 6.) The EEOC dismissed Plaintiff's grievance against Defendants and issued Plaintiff a Right to Sue Letter. (Compl. (#3) 6.)

Plaintiff subsequently filed this action alleging that, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, Defendants discriminated and retaliated against her because of her disability.

## II.   Legal Standard

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[3]While Plaintiff states additional relevant facts in her briefing, the court cannot consider those facts because they are not a part of Plaintiff's complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting that, as a general rule, a district court may not consider any material beyond the pleadings when considering a motion to dismiss for failure to state a claim); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (stating that when the court is testing the legal sufficiency of a complaint by a motion under Rule 12(b)(6), its "review is limited to the complaint").

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally. *Bernhardt v. Los Angeles County*, 339 F.3d 290, 295 (9th Cir. 2003). "In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt . . . a pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.

4

1988) (internal quotation marks and citations omitted).

**III.     Discussion**

      Plaintiff alleges that during the course of her employment with the Tribune, she suffered from discrimination, hostile work environment, and retaliation.  Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that (1) Plaintiff is not disabled under the ADA, (2) Defendants made reasonable accommodations, and (3) Plaintiff has failed to allege sufficient facts to establish an adverse employment action.  The court will address these arguments below.

      **A.  Discrimination**

      Plaintiff alleges that, in violation of the ADA, the Tribune and Streets discriminated against her because of her disability.  Title I of the ADA prohibits private and public employers from discriminating against qualified individuals with disabilities in employment practices.  *Bass v. County of Butte*, 458 F.3d 978, 980 (9th Cir. 2006).  Specifically, the ADA prohibits an employer from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

      The Ninth Circuit has held that Title I of the ADA does not authorize individual liability for supervisors and co-workers.  *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that individual defendants cannot be held personally liable for violations alleged under Title I of the ADA).  Accordingly, the court will dismiss all Plaintiff's claims against Defendant Streets because Plaintiff has sued Streets in her individual capacity.

      As to the liability of employers, the ADA contemplates two types of discrimination: (1) disparate treatment and (2) failure to accommodate.  *See McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004).  The court will address whether Plaintiff has stated a claim for relief under each of these theories.

5

### 1. Disparate Treatment

To state a discrimination claim under the theory of disparate treatment, a plaintiff must show that: "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability." *Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000).

#### a. Disability

Defendants argue the factual allegations in the complaint do not establish that Plaintiff is disabled for the purposes of the ADA. The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008) (quoting 42 U.S.C. § 12102(1)).

The court finds that Plaintiff has alleged sufficient facts to suggest that she is disabled under 42 U.S.C. § 12102(1)(A). Under this provision, the inquiry into whether Plaintiff is disabled involves a three-part analysis: (1) does Plaintiff have a physical or mental impairment; (2) does such impairment limit one or more of her major life activities; and (3) is such limitation substantial. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

Here, Plaintiff broke her ankles, and now has metal implants in both ankles. (Compl. (#3) 4, 5G.) Plaintiff alleges that she suffers from pain in her ankles that prevents her from walking long distances. (Compl. (#3) 5O.) Thus, Plaintiff has alleged that she has a physical impairment.[4]

An activity is a major life activity if it is "of central importance to most people's daily lives." *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1062 (9th Cir. 2005). "[F]unctions such as

---

[4] While Plaintiff states additional facts relevant to a finding of a physical impairment in her briefing, the court cannot consider those facts because they are not a part of Plaintiff's complaint. *See Cervantes*, 5 F.3d at 1274. If Plaintiff amends her complaint, she can add relevant facts to the complaint.

caring for one's self, walking, seeing, hearing, speaking, breathing, learning, and working" are major life activities. *Bragdon*, 524 U.S. at 638 (quoting 29 C.F.R. § 1630.2(1)).

The court finds that Plaintiff has alleged sufficient facts to suggest that her physical impairment limited her ability to perform major life activities, such as working and walking. Specifically, Plaintiff alleges that she cannot work past 6 p.m. (Compl. (#3) 5K.) Plaintiff also claims that because of her impairment, she cannot walk long distances and has to park close to the entrance when she is in pain. (Compl. (#3) 5O.)

Finally, to survive a motion to dismiss, Plaintiff must allege facts demonstrating that Plaintiff's disability substantially limited her ability to perform major life activity, in this case, working and walking. To substantially limit a major life activity, a disability must prevent a person from performing a major life activity or significantly restrict the "condition, manner or duration under which an average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). In deciding whether a particular impairment is substantially limiting, a court must consider the nature, severity, and impact of the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

There is a substantial limitation of the major life activity of working when a person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1009 (9th Cir. 2007). In the present case, Plaintiff alleges that her disability substantially limited her ability to work because she could not stay past 6 p.m. to proof the advertisements when the Graphics Department did not finish them prior to 6 p.m. (Compl. (#3) 5J.) However, the complaint specifies only one instance when Plaintiff was not able to proof her clients' advertisements because she could not stay after 6 p.m. (Compl. (#3) 5J.) As such, the court finds that Plaintiff's inability to work past 6 p.m. did not substantially limit her ability to work.

1    Nonetheless, the court finds that Plaintiff's allegations about her inability to walk support
2 the conclusion that Plaintiff's ability to walk and work is substantially limited within the scope of
3 the ADA.  Plaintiff identifies numerous instances when she was in too much pain to walk and had
4 to park in the customer parking lot.  (Compl. (#3) 5O, 5P, 5Q.)  These facts suggest that Plaintiff's
5 impairment has substantially limited her ability to walk.  Plaintiff's inability to walk impairs her
6 ability to get to her current workplace.  Moreover, as compared to the average person with
7 comparable qualifications, Plaintiff's difficulty walking effectively excludes Plaintiff from
8 performing a wide variety of other jobs, thus substantially limiting her major life activity of
9 working.  Consequently, taking Plaintiff's allegations concerning her inability to walk as true, the
10 court finds that Plaintiff has alleged sufficient facts to suggest that she is disabled within the
11 meaning of the ADA.

### b.    Qualifications to Perform the Job

13    Next, to state a claim under the ADA, Plaintiff must allege sufficient facts suggesting that
14 she was qualified, with or without reasonable accommodations, to perform her job.  *See Braunling*,
15 220 F.3d at 1156.  The employee bears the burden of showing that she can perform the essential
16 functions of the job, with or without reasonable accommodations.  *Gambini v. Total Rental Care,*
17 *Inc.*, 486 F.3d 1087, 1090 (9th Cir. 2007) (citing 42 U.S.C. § 12111(8)).  The ADA does not
18 require an employer to exempt an employee from performing essential functions or to reallocate
19 essential functions to other employees.  *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006)
20 (citing 29 C.F.R. § 1630).  Essential functions are the fundamental job duties of the employment
21 position.  *Id.*

22    Accepting the allegations in the complaint as true and taking them in the light most
23 favorable to Plaintiff, the court finds that Plaintiff has alleged facts indicating she was qualified to
24 perform her job.  Plaintiff states she has over thirty years of experience in media sales.  (Compl.
25 (#3) 5E.)  Plaintiff alleges that when Streets took away one of Plaintiff's major accounts, the

1  Tribune's publisher told Plaintiff during a telephone call that she worked hard and that Streets
2  should give the account back to Plaintiff.  (Compl. (#3) 5R.)
3        As to the requirement that all advertisement representatives, including Plaintiff, had to stay
4  past 6 p.m. to proof the advertisements of their clients if the advertisements were not finished
5  before that time, the court finds that this task was part of Plaintiff's essential duties.  However, the
6  allegations in the complaint do not suggest that Plaintiff was not qualified to perform this task.
7  Instead, the allegations suggest that Defendants had to make reasonable accommodations for
8  Plaintiff's disability to allow Plaintiff to successfully perform the essential functions of her job.
9        Accordingly, the court finds that the complaint alleges sufficient facts to demonstrate that
10 Plaintiff was qualified for her job.

          **c.**     **Adverse Employment Action**

12       For purposes of a disparate treatment claim, an adverse employment action is an action that
13 materially affects the compensation, terms, conditions, and privileges of employment.  *Davis v.*
14 *Team Elec. Co.*, 1080, 1089 (9th Cir. 2008) (defining adverse employment action in the context of
15 Title VII discrimination claim).[5]  "[H]iring, firing, failing to promote, reassignment with
16 significantly different responsibilities, or a decision causing significant change in benefits" are
17 adverse employment actions.  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)
18 (discussing the scope of adverse employment action within Title VII).
19       Plaintiff's discrimination claim appears to be based on the allegation that Defendants
20 singled Plaintiff out for negative treatment because of her disability.[6]  (Compl. (#3) 5J.)

---

[5]Although *Davis* is a Title VII case, its definition of the adverse employment action applies equally in the ADA context.  *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9 Cir. 2001) (holding that Title VII analysis applies in ADA case); *see also Hernandez v. Hughes Missile Co., Inc.*, 362 F.3d 564, 568 (9th Cir. 2004) (drawing on Title VII precedent to set out plaintiff's burden in ADA case).

[6]Defendants also ask the court to dismiss Plaintiff's claim of constructive discharge, arguing that the allegations in the complaint do not support this cause of action.  (Defs.' Motion Dismiss (#5) 6:15-7:19.)  A "constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a

Specifically, Plaintiff identifies the following as adverse employment actions: (1) Streets required her to work after 6 p.m.; (2) Streets prohibited her from parking in the customer parking lot; (3) Streets micro-managed only her work; (4) Defendants failed to accommodate her request for a new chair, but provided a new chair to another employee who requested it; and (5) Streets took away one of her major advertising accounts.

The allegations in the complaint do not suggest that these actions significantly affected Plaintiff's job responsibilities or had any impact on Plaintiff's compensation.[7] As a result, in the absence of allegations suggesting an adverse employment action, the court finds that Plaintiff has not stated a claim for discrimination under the ADA. Accordingly, the court will dismiss this claim.

### 2.    Reasonable Accommodation

A discrimination claim under the ADA can also arise where an employer fails to make a reasonable accommodation for an employee's disability. *McGary*, 386 F.3d at 1265-66 (citations omitted). Here, Plaintiff alleges Defendants failed to reasonably accommodate her physical impairments because they did not provide a chair she requested and were unwilling to let her park in the customer parking lot.

"Reasonable accommodation may include but is not limited to: (1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

---

competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (citations omitted). To state a claim of discrimination under the theory of constructive discharge, an employee must demonstrate that a working environment is so intolerable and discriminatory as to justify a reasonable employee's decision to leave. *Lawson v. Washington*, 319 F.3d498, 503 (9 Cir. 2003) (citations omitted).
    Here, the court finds that the allegations in the complaint do not suggest that Defendants' allegedly discriminatory actions caused Plaintiff to leave her job with the Tribune. Only later in her briefing does Plaintiff claim that she resigned from the Tribune because Defendants discriminated against her. (Pl.'s Opp. Mot. Dismiss (#10) 7:12-13.) Accordingly, the court will not address this claim. If Plaintiff amends her complaint, she may state a cause of action for constructive discharge in the amended complaint.

[7]If Plaintiff amends her complaint, she may state facts demonstrating how Defendants' actions materially affected her compensation, terms, conditions, and privileges of her employment.

(2) job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modification of equipment or devices . . . and other similar accommodations[.]" 29 C.F.R. § 1630.2.

Here, the court finds that Plaintiff's requests for closer parking and an appropriate chair qualify as reasonable accommodations for her disability. Specifically, Plaintiff needed to park in the customer parking lot to access her workplace. *See Sunada v. Clark County Sch. Dist.*, No.08-1027, 2010 U.S. Dist. LEXIS 28182, at *30-33, 2010 WL 1252686, at *11 (D. Nev. March 24, 2010) (considering plaintiff's request for closer parking because of his inability to walk long distances as a request for reasonable accommodation). Similarly, by requesting an adequate chair, Plaintiff asked Defendants to acquire or modify office equipment to accommodate her disability. *See Brown v. Potter*, No.08-3095, 2009 U.S. Dist. LEXIS 114319, at *21, 2009 WL4756132, at *9 (C.D. Cal. Dec. 8, 2009) (listing a lower lumbar support chair among reasonable accommodations provided by the employer).

"Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (citations omitted). The interactive process requires the following: (1) direct communication between the employer and the employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that was reasonable and effective. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2001) (citations omitted).

An employer is liable for failing to provide reasonable accommodation only if it is responsible for the breakdown in the interactive process. *Id.* (citations omitted). Although an employer does not need to provide the specific accommodation the employee prefers, the accommodation must be reasonable in than it enables the employee to perform the duties of her

11

position. *Id.*

As to Defendants' unwillingness to accommodate Plaintiff's parking needs, the court finds that the allegations in the complaint do not suggest that Defendants failed to implement reasonable accommodations for Plaintiff's disability. Specifically, after Plaintiff told the Tribune's publisher McCaffrey about her need to park in the customer parking lot when she is in pain or when it snows, McCaffrey granted her request. (Compl. (#3) 5O.) Thus, Defendants offered an accommodation that was reasonable and effective.

Regarding Plaintiff's request for a chair, the court finds that Plaintiff has alleged sufficient facts indicating that Defendants did not offer an effective accommodation for Plaintiff's physical impairment. Plaintiff claims the Tribune gave her an old chair that continuously bumped Plaintiff's right ankle that had titanium implants. (Compl. (#3) 5V.) Plaintiff alleges that she asked Streets for a new chair, but Defendants did not provide one for her. (Compl. (#3) 5V.) At the same time, Defendants provided a new chair for another employee who requested a better chair. (Compl. (#3) 5V.) The allegations in the complaint suggest that by not responding to Plaintiff's request, Defendants could be responsible for breaking down the interactive process of implementing appropriate accommodations for Plaintiff's disability. Moreover, issues of fact remain concerning the circumstances of Plaintiff's request and Defendants' response. As a result, the court finds that Plaintiff has stated a claim for discrimination under the ADA based on the failure of Defendants to provide reasonable accommodation for Plaintiff's disability.

**B. Hostile Work Environment**

As to the claim of hostile work environment, Plaintiff alleges that because of her disability, Defendants subjected her to verbal and emotional abuse and threats of physical violence.

The Ninth Circuit has not explicitly recognized a claim for hostile work environment under the ADA. *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003). However, several other circuits have recognized hostile work environment as a cause of action under the ADA

because of the similarity between the language of the ADA and Title VII.  *See Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719-20 (8th Cir. 2003); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 175 (4th Cir. 2001); *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 233 (5th Cir. 2001) (concluding that both the ADA and Title VII prohibit discrimination with regard to "other terms, conditions, and privileges of employment," and since such language is the basis for a hostile work environment claim under Title VII, the same must be true under the ADA).  Similarly, the Ninth Circuit has recognized that in reviewing claims under the ADA, the court looks to Title VII case law to determine whether harassment occurred.  *See Hernandez v. Hughes Missile Co., Inc.*, 362 F.3d 564, 568 (9th Cir. 2004).

Here, even assuming that the Ninth Circuit would recognize a hostile work environment claim under the ADA, Plaintiff has failed to state a claim upon which relief can be granted.  To state a claim of hostile work environment, Plaintiff must show that: (1) she is a qualified individual with disability; (2) she suffered from unwelcome harassment; (3) the harassment was based on her disability or a request for accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) Defendants knew or should have known of the harassment and failed to take prompt remedial action.  *See Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3th Cir. 1999) (applying Title VII hostile work environment to a claim stated under the ADA).

To determine whether the alleged harassment was sufficiently severe or pervasive, the court looks at "all the circumstances, including the frequency of discriminatory conduct; its severity; whether it was physically threatening, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotation marks and citation omitted) (defining harassment under Title VII).

The court finds that even taking the allegations in the complaint in the light most favorable to Plaintiff and accepting them as true, the harassment directed at Plaintiff was not sufficiently severe and pervasive to state a claim of hostile work environment. For a finding of a hostile work environment, the alleged harassment must be extreme. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (stating that in the context of Title VII, simple teasing, off-hand comments, and isolated incidents do not amount to harassment). During Plaintiff's almost four-year tenure with the Tribune, Plaintiff's co-workers and manager made several derogatory comments about her physical impairment and the accommodations she needed. While these comments and threats could be hurtful, demeaning, and embarrassing, they do not rise to the level of extreme and pervasive harassment required to support a hostile work environment claim. Consequently, the court will dismiss this claim.

**C. Retaliation**

Plaintiff also claims that Defendants retaliated against her because of her disability and because she requested accommodations for it. To state a claim for retaliation under the ADA, a plaintiff must show the following: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *See Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir. 2004).

Pursuing one's rights under the ADA constitutes a protected activity. *Id.* at 850 (internal quotation marks and citation omitted). Here, Plaintiff engaged in a protected activity by requesting accommodations for her disability, such as a chair and permission to park in the customer parking lot and leave work by 6 p.m.

An adverse employment action is "any action reasonably likely to deter employees from engaging in protected activity." *Id*. Streets allegedly made multiple derogatory comments about Plaintiff's disability and the accommodations Plaintiff required. (Compl. (#3) 5A, 5B, 5C, 5F, 5O, 5P.) Moreover, Plaintiff claims that Defendant Streets took away one of Plaintiff's major accounts

because of Plaintiff's disability.  (Compl. (#3) 5R.)  In light of Plaintiff's subsequent complaints to the Tribune's publisher about Streets' actions, the court finds the allegations in the complaint indicate that Plaintiff could have suffered an adverse employment action because of her disability.  Consequently, the court finds that Plaintiff stated a claim for retaliation under the ADA.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (#5) is GRANTED in part and DENIED in part.  Plaintiff shall have thirty (30) days from the entry of this order to file an amended complaint.

IT IS SO ORDERED.

DATED this 19th day of July, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE